Haight, J. (dissenting).
The indictment charges the defendant with having committed the crime of perjury, in falsely swearing to a claim or account against the city of Buffalo. It charges that the city is a municipal corporation, and that it is provided by its charter that the common council shall audit all claims against the city, but no unliquidated claim shall be received for audit unless made out in detail and accompanied by an affidavit that the claim and items and specifications thereof are, in all respects, just and true.
That before it shall be audited by the common council the claim shall be referred to the auditor of the city. That it is made the duty of the commissioner of public buildings to correctly audit and certify to the correctness of all bills and accounts and claims for services, material furnished and work performed for the city relating to the public buildings before such bills and accounts shall be presented to the council for audit and payment, and where the claim is for work performed or material furnished upon or about any public school building, that it shall also be the duty of the principal of the school to certify to the correctness of the contents of the bill. That the account was made out by the defendant and the alleged false affidavit attached, and that the same was delivered by him to one Robert H. Sliker, who was then the commissioner of public buildings of the city, for his certificate that the same was correct and true, for the purpose of presenting the same to the common council for audit and payment. That the commissioner of public buildings thereupon attached his certificate to that effect, and the defendant thereupon delivered the same to the principal of the public school No. 19 of the *626 city of Buffalo, that being the school building in which the services stated in the bill was claimed to have been performed, for his certificate that the claim was correct and true, for the purpose and with the intention and design of presenting it for audit and payment by the common council.
The question presented by the demurrer is as to whether the delivery of the claim with the false affidavit attached, to the commissioner of public buildings or to the principal of public school No. 19 constituted a crime.
Under the charter, it is provided that every person who-shall wilfully and corruptly swear false in any affidavit, authorized by the charter, shall be deemed guilty of perjury. Under the provisions of the Penal Code, it is made-perjury for any person to wilfully and knowingly testify and declare, depose or certify falsely to any material matter in an affidavit required by law. Section 96.
The crime of perjury being covered by the provisions of the Penal Code, it doubtless supersedes the provision of the-charter, for only the penal provisions of charter acts which are not covered by the provisions of the Penal Code are-saved by the Code. People v. Jaehne, 3 N. Y. State Rep. 11-21.
The affidavit to the claim in question was required by law, for under the provisions of section T, title 3, of the-city charter, the claim was not only required to be made out in detail, but to be accompanied by an affidavit that, the claim and the items and specifications thereof were in all respects just and correct, and that no payment had been made and that no set-off exists except those stated. Section 100 of the Penal Code provides that the making of the deposition or certificate is deemed to be complete within the-provisions of this chapter from the time when it is delivered by the defendant to any other person with intent, that it be uttered or published as true.
By referring to the charter and ordinances we find that various steps are necessary in order to obtain payment of a claim against the city. As to the claim in question it was necessary for it to be made out in detail and verified by the claimant. It had to be audited and certified to be correct by the commissioner of public buildings. This was one step in the proceedings to obtain its final audit and payment.
Second. It had to be delivered to the principal of the-public school and audited and certified by him.
Third. It had to be filed with the clerk of the city and referred by the council to the city auditor for his approval and allowance before it could be directed to be paid by the council. All of these officers are charged with official duty *627 in reference to the auditing and allowing of the bill. When therefore the defendant presented his claim with his false oath attached, to the commissioner of public buildings for his audit and certification with the intention of procuring payment of the claim by the common council of the city, it appears to me that it was the delivery to another person with the intent that it be uttered as true within the meaning of section 100 of the Penal Code, and that the crime became complete.
Again, after procuring this certificate of the commissioner of public buildings, the delivering of the bill with the false affidavit and certificate of the commissioner to the principal of public school No. 19 for the purpose of procuring his certificate with the intent of procuring payment of the false claim by the common council of the city; that the crime was again complete within the provisions of that section.
It is contended that the charter does not require the affidavit to be endorsed upon or attached to the claim until it is presented to the common council. The charter is silent as to the precise time at which the affidavit shall be made. It only provides that no unliquidated claim shall be received for audit unless made out in detail and verified so that the verification must precede the reception of it for audit. The ordinance of the city, however, authorized by its charter, provides that all accounts presented to the council for audit and allowance as claims against the city shall be made out as required by section 7, title 3, of the city charter, and the same shall be filed with the city clerk for presentation to the council.
Before filing such accounts the same shall be certified by the officer or person authorized by the council to create the liability, etc. Under this ordinance the account must be made out as required by section 7, title 3 of the charter before fifing with the city clerk. That section requires the account to be verified. If it is made out as required, it must therefore be verified. Before fifing such account the' same must be certified by the officer or persons authorized by the council t create the liability. In the case under consideration it must be certified by the commissioner of public buildings and the principal of the school. These officers cannot certify to the bill before it is made out. They are to certify to the bill before it is filed with the clerk.
It, therefore, appears to me that the fair construction of the provision is, that the account must be made out as required by section 7, title 3 of the charter, that is, made out and verified, and then before fifing with the clerk it must be certified to by these officers. To hold otherwise would *628 require the officers to certify to the account when only made out in part, as required by such section. This would deprive them of the evidence that they have the right to have before them when they are called upon to officially audit and certify the bill.
There are .many public buildings in the city of Buffalo and it can hardly be presumed that the commissioner of public buildings can personally know of every nail or screw that may he used in their construction or repair. He is required to generally supervise the construction and repairs, and in that way he knows the character of the work performed and material furnished, the prices that should be paid, etc. But as to every one of the minor details that would not come under his personal observation he cannot be expected to possess or have accurate knowledge in reference thereto, and must rely to some extent upon the statements and representations of the person doing the work.
It appears to me to be wise and just and within the spirit and intent of the charter and ordinance that this officer has the right to have before him a verified account before he can be required to audit and certify to the same.
The question presented upon this demurrer is of considerable importance. The indictment is fully and carefully drawn, covering all of the charges, that it is possible to make in the case. If the demurrer is to be sustained, then no person can be convicted of the crime unless they have been successful in imposing upon all of the officers required to certify and audit the bill before its presentation to the c'ommon council. If the fraud is detected by either of these officers the criminal must go unpunished for the reason that his claim had not reached the custody of the common council.
These officers under the charter and ordinance are posted as sentinels to guard the city treasury. They are the officers, under whose supervision the work was performed and they are chiefly relied upon to detect any error or fraud. After it has passed their hands the audit by the council is chiefly formal and in most cases as a matter of course. The crime was morally complete when the defendant subscribed and swore to the false affidavit He then had committed the crime in his own heart.
When he subsequently delivered it to the commissioner of public buildings he uttered and published to that officer that the account was true; that it was sworn to by him. He presented it to that officer intending to deceive him as to the correctness of the account and to procure his certificate to aid in obtaining final payment, and this, it appears to me, made the crime complete within the provisions of the Code already referred to.